UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

EVELYN J. ALDERSON,

                Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration,

                Defendant.

CASE NO. C09-5081BHS

REPORT AND RECOMMENDATION

Noted for September 25, 2009

This matter has been referred to Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews v. Weber, 423 U.S. 261 (1976). Plaintiff, Evelyn J. Alderson, brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security denying his application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33. This matter has been briefed, and after reviewing the record, the undersigned recommends that the Court remand the matter to the administration for further consideration.

REPORT AND RECOMMENDATION - 1

## INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff, Evelyn Alderson, was born in 1958. Plaintiff dropped out of high school at the age of 16 years old. She got married the same year. She subsequently earned a GED, and in 1992, plaintiff completed correctional officer training. She has also attending community college in Alaska and in Port Angeles, Washington. Plaintiff states that she has earned approximately ninety-eight (98) college credits. Ms. Alderson has work experience as a mill worker, cashier, housekeeper, waitress, fisherman, animal control officer, grocery store clerk, and fish processor. Tr. 207. From April 15, 1993, until November 17, 2004, Plaintiff worked as a corrections officer at the Clallam Bay Corrections Center. Tr. 120.

On November 12, 2003, plaintiff was involved in a training exercise at the prison and injured her shoulder and knee. Tr. 155. On November 17, 2003, Dr. Kintner examined Ms. Alderson. Dr. Kintner took several x-rays and assessed the following:

> I think she has multiple contusions and muscle strain at the neck, right shoulder, left hand, and right knee, as well as possibly an exacerbation of old calcific tendinitis, all directly related to injuries obtained in the described incident on 11/12/03.

Tr. 269. On December 8, 2003, plaintiff returned to Dr. Kintner, expressing frustration with lack of improvement and explaining a history of aches and pains, lack of sleep, and depression. Tr. 266. Dr. Kintner wrote, "She has had concerns about lupus and other specific diseases in the immune system which may not have been test for (sic) by Dr. Lewis." *Id*. "I certainly think it is likely that the patient has some underlying cause of her musculoskeletal aches and pains and possibility such as fibromyalgia spring to mind – that has been mentions (sic) to her before." *Id*. Dr. Kintner referred plaintiff to Dr. Brion, a physiatrist. Tr. 267, 157.

Plaintiff went to Dr. Brion's office on December 30, 2003. She completed a questionnaire, stating that her last day of work was on December 12, 2003, and reporting blurred

REPORT AND RECOMMENDATION - 2

vision, abdominal pain, urinary urgency, musculoskeletal pain, neurological and psychological symptoms. Tr. 157-58. Dr. Brion examined and tested plaintiff, he concluded, "[H]er pain complaints today are primarily from fibromyalgia and not from the medial meniscus injury or the supraspinatus tendonopathy shown on MRI." Tr. 156.

On February 24, 2004, plaintiff had a return visit to Dr. Brion's office, and she explained her employer was offering her a position as a custodial supervisor, which she preferred because it allowed her to be more mobile. Tr. 149. On March 29, 2004, Dr. Brion discussed with Ms. Alderson the use of Vicodin to control pain, and stated the following, "I am not a fibromyalgia expert and I would like her to see another physician, Dr. Susan Shlifer, in Poulsbo." Tr. 147. Plaintiff did not go to Dr. Shlifer until January 2005. Tr. 191. In the interim, plaintiff was examined by Dr. Kintner on July 5, 2004. Dr. Kintner reported the following:

> The patient continues to do well, having missed no work and remaining stable. She does have occasional flares of body wide pain, mostly related to long periods of sitting, driving to and from work, occasionally to changes in temperature and weather.
>
> Right shoulder problems from her injury continue to slowly improve and have been helped a lot by her therapy. Orthopedic consultations by Dr. Gouge resulted in the opinion that she had an injury that did not require surgery but at the same time could be expected to cause her significant persisting problems. It is all stable, however, and not preventing her from her from doing her current work at the Clallam Bay Prison.
>
> Accordingly, I think that this case can be closed and the patient is in agreement. It is possible that problems may flare in the future and she could, of course, always apply for reopening of the claim, should that prove necessary.

Tr. 145, 242.

On October 15, 2004 and November 26, 2004, Ms. Alderson returned to Dr. Kintner for flare ups of her pain. In November, Dr. Kintner stated she was under stress due to her job, but

treating herself in a very healthy fashion. Tr. 236. Dr. Kintner noted that she had taken a temporary leave from work, and he authorized her to return to work on December 4, 2004. *Id*.

Plaintiff's symptoms did not subside as expected by Dr. Kintner. On January 4, 2005, he opined that she would not be able to work for three months and that it was unlikely if she could ever work again as a correctional officer. Tr. 232.

Plaintiff filed an application for disability insurance benefits on June 21, 2005. Tr. 76-78. She alleges disability since November 17, 2004, based on fibromyalgia and plantar fasciitis Tr. 76, 119. An administrative law judge ("ALJ") was assigned the matter, and an administrative hearing was held on April 3, 2008. The matter was continued, and a second hearing was conducted on June 17, 2008.

On August 7, 2008, the ALJ issued a decision, denying plaintiff's application for benefits. The ALJ found that Ms. Alderson's severe impairments included stress/anxiety, adjustment disorder and depressed mood, but that Ms. Alderson's musculoskeletal impairments, diagnosed variously as fibromyalgia, chronic fatigue syndrome and knee/shoulder bursitis or strain, were not severe impairments. Tr. 17, 20-21. The ALJ further concluded plaintiff retained the ability to works as a repair order clerk, which was identified as a sedentary, low stress job with infrequent dealings with people. Tr. 23-24.

The administration's Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final administrative decision. Tr. 5-8; 20 C.F.R. §§404.981, 422.210.

On February 12, 2009, Plaintiff filed her Complaint with the court seeking judicial review of the ALJ's decision. Plaintiff argues the ALJ made the following errors:

(1) Whether the ALJ erred when she found plaintiff had returned to work on June 12, 2008;

REPORT AND RECOMMENDATION - 4

(2) Whether the ALJ erred when she allegedly failed to consider plaintiff's musculoskeletal pain and fatigue caused "severe" impairments;

(3) Whether the ALJ erred in her assessment of plaintiff's credibility; and

(4) Whether the ALJ erred in her assessment of plaintiff's residual functional capacity ("RFC").

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 (9th Cir.2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir.1989).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. Id.

Plaintiff bears the burden of proving that he or she is disabled within the meaning of the Social Security Act (the "Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (*internal citations omitted*). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last,

REPORT AND RECOMMENDATION - 5

for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if his or her impairments are of such severity that he or she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

## **DISCUSSION**

### *A. The ALJ Properly Found Plaintiff Resumed Working On June 12, 2008*

An individual who is engaged in "substantial gainful activity" ("SGA") is not disabled. 42 U.S.C. § 423(d) (1) (A); Andrews v. Shalala, 53 F.3d 1035, 1040 (9th Cir. 1995) (explaining the five-step evaluation of disability); 20 C.F.R. § 416.920(b). SGA is activity which is both "substantial" and "gainful." 20 C.F.R. § 416.972 (definition of SGA). "Substantial" work activity involves "significant physical or mental activities" and may include part-time work and work which pays less or involves fewer responsibilities than previous work. 20 C.F.R. § 416.972(a). "Gainful" work activity is work activity which is usually done for pay or profit. 20 C.F.R. § 416.972(b). It is the claimant's burden to show that he is not engaged in substantial gainful activity. Sanchez v. Secretary of Health & Human Services, 812 F.2d 509, 511 (9th Cir. 1987).

Earnings may show that an individual is engaged in SGA. An individual earning more than a certain amount each month is presumed to be engaged in SGA. Katz v. Secretary of Health & Human Services, 972 F.2d 290, 293 (9th Cir. 1992) (earnings beyond a certain guideline create a rebuttable presumption of SGA); Keyes v. Sullivan, 894 F.2d 1053, 1056 (9th Cir. 1990) (same); 20 C.F.R. §§ 404.1574(b)(2), 416.974(b) (2) (vii)(setting forth the monthly

guideline).  Part-time work that pays less than full-time work can still be SGA.  <u>Katz</u>, 972 F.2d at 292; 20 C.F.R. § 416.972(a).

    Here the ALJ reviewed the record and wrote the following:

> The claimant returned to work on June 12, 2008, at the Clallam County Housing Authority as a work order clerk in data entry.  She testified that currently, her pain is manageable and said that she was feeling great.  She attributed this improvement to hypnotherapy and testified that she was confident that the therapy would continue to work.  This work is part time 6 hours per day, at $10 per hour, Monday through Friday.  The claimant described it as a low stress job.  Although working part time, the claimant earns the presumptive amount necessary to qualify her work as substantial gainful activity and receives no special accommodation in this job.  I therefore find that she has been engaging in substantial gainful activity since June 12, 2008.  This decision therefore applies from the claimant's alleged onset date of November 17, 2004 to June 12, 2008.

Tr. 17.

    Plaintiff argues the ALJ erred because, at the time of the hearing, she had started working only one week prior to the hearing.  The undersigned finds no merit to the argument.  The ALJ properly evaluated plaintiff's work activity, applied the regulatory presumption based on plaintiff's earnings at the time, and thus, plaintiff bears the burden of producing evidence to overcome the presumption.  Plaintiff did not produce any evidence to the ALJ or the court to overcome the presumption that she was performing SGA.

    Plaintiff further argues that the ALJ should have considered plaintiff's work an unsuccessful work attempt because it was less than three months in duration.  The regulations do not support this argument. The regulations state that work of 3 months or less to be an unsuccessful work attempt only if the plaintiff had stopped working, or reduced her work and earnings dropped below the substantial gainful activity earnings level, because of her alleged impairments or because of the removal of special conditions which took into account your impairment and permitted you to work." 20 C.F.R. §404.1574(c)(3).  Again, there was no

REPORT AND RECOMMENDATION - 7

evidence put before the ALJ, or this court, showing that plaintiff discontinued or reduced the hours she was working for the housing authority.

### B. The ALJ Improperly Evaluated Plaintiff's "Severe" Impairments

Step-two of the administration's evaluation process requires the ALJ to determine whether an impairment is severe or not severe. 20 C.F.R. §§ 404.1520, 416.920 (1996). The step-two determination of whether a disability is severe is merely a threshold determination of whether the claimant is able to perform his past work. Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007). A finding that a claimant is severe at step-two only raises a prima facie case of a disability. Id. *See also* Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir.1999).

An impairment is "not severe" if it does not "significantly limit" the ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). The Social Security Regulations and Rulings, as well as case law applying them, discuss the step-two severity determination in terms of what is "not severe." According to the Commissioner's regulations, "an impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521(a)(1991). Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 C.F.R. § 140.1521(b); Social Security Ruling 85-28. An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988)(*adopting SSR 85-28*). The step-two analysis is "a *de minimis* screening device to dispose of groundless claims," Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir.1996).

Plaintiff alleges that the ALJ should have found that her fibromyalgia and/or chronic fatigue syndrome caused "severe" physical impairments. As noted above, the ALJ found Plaintiff had only non-exertional or mental impairments, including stress/anxiety, adjustment disorder, and depressed mood. The ALJ did not find any exertional or physical limitations.

After reviewing the record, the court finds the ALJ erred when she did not consider plaintiff's diagnosed fibromyalgia and/or chronic fatigue as cause for any "severe" impairment at step-two in the administrative evaluation process. The medical records overwhelmingly support plaintiff's claim she has suffered from either fibromyalgia or chronic fatigue syndrome. As noted above, Dr. Kintner examined and treated plaintiff for fibromyalgia for a significant time. Dr. Brion also diagnosed and treated plaintiff for fibromyalgia. In January 2005, plaintiff was examined and began treatment with Dr. Shlifer, a fibromyalgia specialist. In February 2005, Dr. Shlifer diagnosed chronic fatigue syndrome, and she prescribed several medications. Tr. 195.

The ALJ rejected these medical opinions, and others (including an IME opinion of Dr. Sohn, a rheumatologist), supporting a finding of a "severe" impairment due to fibromyalgia and/or chronic fatigue syndrome, because "there is little objective medical evidence to support these impairments." Tr. 18. The ALJ's analysis does not comport to the step-two "*de minimis*" screening standard. Plaintiff has presented sufficient evidence to survive step-two of the evaluation process. More importantly, the ALJ's rejection of the medical opinions supporting a diagnosis of either fibromyalgia or chronic fatigue syndrome is misplaced.

First, the administration has recognized the close relationship between the two diagnoses. Social Security Ruling 99-2p states that a claimant with an impairment that fulfills the American College of Rheumatology criteria for fibromyalgia may also meet the criteria for chronic fatigue

REPORT AND RECOMMENDATION - 9

syndrome. The administration also recognizes that these impairments produce minimal, if any, objective medical evidence. According to the Social Security Administration:

> CFS [Chronic Fatigue Syndrome] is a systematic disorder consisting of a complex of symptoms and signs which may vary in incidence, duration and severity. No specific etiology or pathology has yet been established by the medical community. CFS is typically characterized by chronic excessive fatigue (frequently following a flu-like illness), which generally lasts 6 months or more and severely limits normal activities of daily living.. A diagnosis of CFS should be reached only after other possible symptoms have been rule out by appropriate physical examination and laboratory testing.

POMS § DI 24575.005 (1993). When evaluating allegations of CFS the Administration's guidelines further provide:

> Documentation of objective physical and/or mental findings is critical in CFS cases in order to determine the presence of a medically determinable impairment. Such documentation is best obtained through longitudinal clinical records from the claimant's treating source(s), and reasonable efforts should be made to secure such information prior to exploring other avenues of development. When a fully favorable decision is not possible based upon physical findings alone, adjudicators should carefully review all the evidence and allegations to determine whether further development for mental considerations may be needed.
>
> [Omitted]
>
> Once a medically determinable impairment is established in a case involving CFS, the severity or the claimant's impairments should be determined on the basis of the totality of signs, symptoms, and laboratory findings, paying particular attention to symptoms that could reasonably be caused by the impairment, in accordance with instructions addressing the evaluation of symptoms, including pain (20 CFR §§ 404.1529 and 416.929, and POMS DI 24501.025 and 24515.060).

*Id*.

Here, the ALJ rejection of the medical opinions finding fibromyalgia and/or CFS with the end run statement that there is little objective evidence to support the diagnosis does not recognize the true nature of the impairments. The ALJ impermissibly rejected plaintiff's

REPORT AND RECOMMENDATION - 10

medical evidence and opinion indicating Ms. Alderson is suffering from pain caused by either fibromyalgia or Chronic Fatigue Syndrome. The ALJ erroneously rejects the fact that fibromyalgia and CFS do not produce objective indicators. *See* Rose v. Shalala, 34 F.3d 13, 16-18 (1st Cir. 1994) and Sisco v. United States Department of Health and Human Services, 10 F.3rd 739, 743-44 (10th Cir. 1993) (where both Circuit Courts criticized an ALJ's reliance on the lack of objective medical evidence to conclude that a claimant did not suffer from CFS).

Plaintiff's arguments that the ALJ erroneously evaluated her credibility and residual functional capacity ("RFC") are largely premised on the ALJ's failure to properly consider her severe impairments (fibromyalgia and chronic fatigue syndrome) at step-two. Accordingly, without discussing the issues in detail, the court finds the ALJ erred in her analysis of plaintiff's credibility and RFC. On remand, the administration should reconsider step-two and the medical evidence to determine plaintiff's severe impairment. In light of a new step-two analysis, plaintiff's credibility and RFC should also be re-evaluated.

## CONCLUSION

Based on the foregoing discussion, the Court should remand the matter to the administration for further consideration, including a review of all the medical evidence and completion of the five-step administrative process.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit

REPORT AND RECOMMENDATION - 11

imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **September 25, 2009**, as noted in the caption.

DATED at this 1st day of September, 2009.

J. Richard Creatura
United States Magistrate Judge